■ In the Matter of MATTHEW MILLER, Petitioner, v COMMISSIONER OF HEALTH FOR THE STATE OF NEW YORK, Respondent. [703 NYS2d 830] —Carpinello, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Administrative Review Board for Professional Medical Conduct which, *inter alia*, suspended petitioner's license to practice medicine in New York.

Petitioner, a physician specializing in family practice, was found guilty of conduct evincing moral unfitness to practice medicine (*see*, Education Law § 6530 [20]) by the Administrative Review Board for Professional Medical Conduct (hereinafter the ARB), which overturned dismissal of this charge by a Hearing Committee of the State Board for Professional Medical Conduct.* The charge is based on petitioner's 16-month consensual sexual relationship with a female patient (hereinafter patient B). The record reveals that patient B began treating with petitioner on November 17, 1994 complaining of nervousness and excess alcohol consumption as a result of personal and financial difficulties in her life. Petitioner diagnosed her with anxiety and prescribed two antianxiety drugs (i.e., BuSpar and Valium). According to petitioner's testimony, he was indeed concerned about patient B's psychological state at the time given the recent events in her life. Notwithstanding his treatment, petitioner had sexual intercourse with patient B less than one month later during a medical house call. The relationship continued until April 11, 1996. During this time period, petitioner continued to treat patient B for, *inter alia*, anxiety, a treatment regimen which continued the prescriptions for BuSpar and Valium.

In reversing the Hearing Committee, the ARB noted that the first sexual encounter with patient B took place during a medical house call, which it found akin to an office visit, and that their relationship did not constitute an isolated instance of bad judgment—as found by the Hearing Committee—given its long duration. Its ultimate conclusion that petitioner's relationship

* The ARB issued a three-year stayed suspension of his medical license and placed him on probation for three years.

with patient B evinced moral unfitness was two-fold. First, although petitioner was "only" patient B's primary care physician, his treatment of her obviously entailed a fiduciary relationship, i.e., he held a position of trust and had training to treat *all* medical conditions, including psychiatric conditions. Second, the relationship compromised his independent medical judgment, a fact petitioner readily admitted during his hearing testimony.

Petitioner claims that this determination should be annulled as arbitrary and capricious. Specifically, he alleges that his status as a nonpsychiatric physician shields him from being found guilty of moral unfitness based on allegations of a consensual sexual relationship with a patient, even during a time period when he provided medical treatment. We strenuously disagree.

Initially, we note that the ARB was empowered to substitute its judgment for that of the Hearing Committee in assessing petitioner's guilt (*see, e.g., Matter of Bottros v DeBuono*, 256 AD2d 1034, 1036). Moreover, we are unable to conclude that its determination that petitioner evinced moral unfitness to practice medicine under the circumstances of this case was arbitrary or capricious (*see, e.g., Matter of Saldanha v DeBuono*, 256 AD2d 935, 936). While the Legislature has expressly proscribed "any physical contact of a sexual nature" between a psychiatrist and his or her patient (Education Law § 6530 [44]; *see*, 8 NYCRR 29.4 [a] [5] [i]), the absence of a corollary proscription in the practice of all other areas of medicine does not ipso facto constitute approval by the Legislature. Rather, the Legislature has obviously vested the State Education Department and its duly created State Board for Professional Medical Conduct, which together are responsible for "[establishing] an administrative unit which shall be responsible for the investigation, prosecution and *determination of alleged violations of professional conduct*" (Education Law § 6507 [4] [h] [emphasis supplied]; *see*, Education Law § 6508; *see also*, Public Health Law § 230), with the responsibility for judging the propriety of such conduct.

Here, the ARB made a determination that petitioner's conduct fit within the confines of Education Law § 6530 (20). Given the uncontested facts in this case—namely, that petitioner went to patient B's home to render medical treatment on November 17, 1994 and ended up having sexual relations with her and that petitioner, despite concerns about her psychological condition and the impairment of his medical judgment, continued the relationship for 16 months—we are loath to find that this determination was arbitrary and capricious.

Finally, petitioner's claim that one of the ARB members was biased is based on pure speculation, thereby providing no basis upon which to annul the determination.

Mercure, J. P., Spain, Graffeo and Mugglin, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.