■ In the Matter of KWABENA ADDEI, Petitioner, v STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT, Respondent. [717 NYS2d 388] —Mugglin, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Hearing Committee of respondent State Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

Petitioner, a surgeon on the staff of Winthrop University Hospital (hereinafter Winthrop), was charged in April 1999 by the Bureau of Professional Medical Conduct with nine specifications of professional misconduct involving allegations of sexual improprieties and charges of fraudulent practice. Specifically, petitioner was charged with moral unfitness to practice medicine as the result of the alleged rape of patient A and the sexual abuse and verbal harassment of five hospital co-workers (hereinafter employees B, C, D, E and H). The charges of fraudulent practice arose out of allegations that petitioner had entered false information on applications for employment at two other hospitals. In those applications, petitioner had indicated that he currently held the position of Director of Surgical Education at Winthrop when, in fact, he had been suspended from that position in April 1997.

Following a hearing before a Hearing Committee of respondent State Board for Professional Medical Conduct (hereinafter Committee), specifications relating to the charged rape of patient A and the charged sexual harassment of employee B were not sustained. The Committee did determine "notwithstanding any mitigating circumstances * * * that [petitioner's] behavior toward employees C, D, E and H was totally inappropriate; showed extremely poor judgment, and evidences moral unfitness." Also, the Committee determined that petitioner had "knowingly, willfully and with an intent to deceive" included false information in two applications for hospital staff appointments, adding that although this demonstrated that petitioner "exercised poor judgment and was wrong in what he did * * * it does not warrant a finding of moral unfitness." Based on the entire record, the Committee revoked petitioner's license to practice medicine in this State prompting his institution of this CPLR article 78 proceeding in which he seeks to annul that determination and the penalty of license revocation.

Petitioner first argues that the Committee lacked jurisdiction to take action with respect to the allegations of his co-workers since the alleged misconduct did not occur "in the

practice of medicine." Education Law § 6504 empowers the Committee to regulate and oversee the medical profession. Whether the alleged misconduct actually occurred within the practice of medicine is a factual determination to be made by the Committee which will not be disturbed if it has a rational basis (*see, Matter of Pell v Board of Educ.*, 34 NY2d 222, 230). Here, sufficient evidence is found because the alleged conduct occurred at Winthrop during working hours, when petitioner's co-workers were on duty and where petitioner held staff privileges in the practice of his profession.

Next, petitioner asserts that even if the Committee had jurisdiction, the acts found against petitioner do not amount to moral unfitness in the practice of medicine within the meaning of Education Law § 6530 (20). We find no merit in this contention. We first observe that petitioner does not deny that the misconduct took place. Moreover, sexual misconduct with co-workers has been found to constitute moral unfitness to practice medicine within the meaning of the Education Law (*see, Matter of Slakter v DeBuono*, 263 AD2d 695; *Matter of Gross v DeBuono*, 223 AD2d 789, 790).

Petitioner next argues that Education Law § 6530 (20) is unconstitutionally vague since it fails to give specific and sufficient notice of the type of activity which would constitute moral unfitness to practice medicine. Although this section does not describe the behavior which constitutes a violation in minute detail, it does provide sufficient warning concerning the manner in which the profession must be practiced (*see, Matter of Binenfeld v New York State Dept. of Health*, 226 AD2d 935, 936, *lv dismissed* 88 NY2d 1052). To comply with the fundamentals of due process, the statute must give persons of ordinary intellect reasonable notice of the proscribed conduct (*see, id.*, at 936). We are satisfied that the term "moral unfitness" encompasses petitioner's conduct and gives fair notice to a person of ordinary intellect of the nature of the proscribed conduct, such that the statute is not unconstitutionally vague.

In sustaining the specifications concerning fraudulent practice, the Committee appropriately rejected petitioner's excuse that he was confused when he reported on two employment applications that he was the Director of Surgical Education at Winthrop from 1980 to the present. Petitioner admits that he failed to mention his suspension from this position on these employment applications. The Committee is under no obligation to accept an accused physician's excuses for perpetrating fraud (*see, Matter of Glassman v Commissioner of Dept. of Health of State of N. Y.*, 208 AD2d 1060, 1061-1062, *lv*

*denied* 85 NY2d 801; *Matter of Van Gaasbeek v Chassin,* 198 AD2d 572, 574, *lv denied* 82 NY2d 665).

Lastly, we address the issue of the penalty. Unless the penalty imposed is so disproportionate to the offenses sustained as to be shocking to this Court's sense of fairness, we are powerless to disturb it (*see, Matter of Pell v Board of Educ.,* 34 NY2d 222, 233, *supra*). While petitioner's misconduct was serious and merits discipline, we are of the view that this case is one of those rare instances where revocation is "so incommensurate with the offense as to shock one's sense of fairness" (*Matter of D'Amico v Commissioner of Educ. of State of N. Y.,* 167 AD2d 769, 771). In this regard, we first note that the Committee found some mitigating circumstances with respect to petitioner's misconduct. The conduct under review was either verbal harassment or inappropriate touching through clothing of a co-worker, some of which occurred in a flirtatious atmosphere, which appeared to promote sexual bantering. With respect to the fraud (in our view the more serious of the two charges in this particular case), we note only that the Committee equivocated in its findings, at one point determining that petitioner had acted knowingly and with a willful intent to deceive, but thereafter characterizing petitioner's conduct as wrong and the result of "poor judgment," but nevertheless determining that "it does not warrant a finding of moral unfitness." Additionally, there is no direct evidence that patient care was impacted, and nowhere in the record is there evidence that his misconduct related to his ability or skill as a physician, a profession that he has practiced for over 30 years (*see, Matter of Colvin v Chassin,* 214 AD2d 854; *Matter of Sarosi v Sobol,* 155 AD2d 125; *see also, Matter of Sarfo v De-Buono,* 235 AD2d 938).

Peters and Lahtinen, JJ., concur.

Crew III, J. (concurring in part and dissenting in part). As to the majority's conclusion that "this case is one of those rare instances where revocation is 'so incommensurate with the offense as to shock one's sense of fairness,'" we respectfully dissent. The Hearing Committee of respondent State Board for Professional Medical Conduct (hereinafter Committee) sustained the specification of moral unfitness based upon petitioner's "totally inappropriate" behavior with respect to employees C, D, E and H and, further, sustained the specifications of fraudulent practice and filing false reports/applications for privileges based upon the false information provided by petitioner on two separate applications for hospital privileges. With respect to such applications, the Committee expressly

found that petitioner's conduct was "knowing[ ], willful[ ] and [undertaken with] an intent to deceive." Given these specific findings which, as the majority observes and we agree, are amply supported by the record, we simply cannot conclude that the penalty imposed is shocking to one's sense of fairness.

Although each case indeed must be judged upon its own facts, this Court previously has held that the willful making of false statements on applications for hospital privileges or employment is, standing alone, sufficient to justify the penalty of revocation (*see, Matter of Sung Ho Kim v Board of Regents*, 172 AD2d 880, 882, *lv denied* 78 NY2d 856; *see also, Matter of Moon Ho Huh v New York State Dept. of Health, Bd. for Professional Med. Conduct*, 256 AD2d 933, 934 [revocation found to be an appropriate penalty for physician's fraudulent conduct]; *Matter of Glassman v Commissioner of Dept. of Health of State of N. Y.*, 208 AD2d 1060, 1061, *lv denied* 85 NY2d 801 [pattern of false statements on hospital applications sufficient to uphold penalty of revocation]). Such conduct plainly demonstrates petitioner's willingness to place his own interests above those of his patients or prospective employers (*see, Matter of Jadoo v DeBuono*, 235 AD2d 644, 645).

Moreover, even accepting the majority's finding that "there is no direct evidence that patient care was impacted," the case law makes clear that "there is no legal requirement that injury be established before disciplinary sanctions can be imposed" (*Matter of Corines v State Bd. for Professional Med. Conduct*, 267 AD2d 796, 800, *lv denied* 95 NY2d 756; *see, Matter of Dolin v State Bd. for Professional Med. Conduct*, 274 AD2d 862, 864; *Matter of Schoenbach v DeBuono*, 262 AD2d 820, 823, *lv denied* 94 NY2d 756). Stated another way, "[t]he fact that petitioner's acts and omissions did not cause any actual harm to his patients does not render the penalty excessive" (*Matter of Moon Ho Huh v New York State Dept. of Health, Bd. for Professional Med. Conduct, supra*, at 934). Based upon the totality of the specifications sustained against petitioner, and taking into consideration the pattern of inappropriate conduct established by the record, we are of the view that revocation of petitioner's license was in all respects proper (*see, e.g., Matter of Saldanha v DeBuono*, 256 AD2d 935, 936).

Accordingly, we would confirm the Committee's determination and dismiss the petition.

Rose, J., concurs. Adjudged that the determination is modified, on the law, without costs, by annulling so much thereof as revoked petitioner's license to practice medicine; matter remitted to respondent for reconsideration of the penalty in accordance with this Court's decision; and, as so modified, confirmed.