■ In the Matter of STUART G. SELKIN, Petitioner, v STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT, Respondent. [719 NYS2d 195] —Crew III, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Administrative Review Board for Professional Medical Conduct which, *inter alia*, suspended petitioner's license to practice medicine in New York for two years.

In October 1998, the Bureau of Professional Medical Conduct (hereinafter BPMC) charged petitioner, a board-certified otolaryngologist, with 26 specifications of misconduct including, insofar as is relevant to this proceeding, practicing with negligence on more than one occasion with respect to patients A and C (fifth specification), conduct evidencing moral unfitness to practice medicine based upon petitioner's consensual sexual relationships with patients E, F, G and H (10th through 13th specifications), failing to maintain adequate patient records with respect to patients A and C (24th and 25th specifications) and failing to comply with BPMC's request for certain medical records (26th specification). Following extensive hearings before a Hearing Committee of respondent State Board for

Professional Medical Conduct, the Hearing Committee sustained that portion of the fifth specification alleging negligence on more than one occasion as to patients A and C, the 10th and 12th specifications alleging moral unfitness to practice medicine with respect to patients E and G, and the 24th and 25th specifications alleging a failure to maintain adequate patient records with respect to patients A and C. The remaining specifications were dismissed. As to penalty, the Hearing Committee revoked petitioner's license to practice medicine and fined petitioner $20,000—$10,000 for failing to maintain appropriate patient records and $10,000 for practicing with negligence on more than one occasion.

BPMC thereafter appealed the Hearing Committee's determination to the Administrative Review Board for Professional Medical Conduct (hereinafter ARB) requesting that the ARB sustain additional specifications of misconduct against petitioner. Petitioner opposed the appeal and argued that the ARB should overturn the Hearing Committee's finding that he engaged in conduct evidencing moral unfitness to practice medicine and, further, that the penalty of revocation was unduly harsh. The ARB sustained the charge of moral unfitness, finding that a consensual sexual relationship between a physician and a patient can constitute conduct that evidences moral unfitness to practice medicine.* The ARB also sustained that portion of the 26th specification relating to petitioner's failure to respond to BPMC's request for records for patient F in violation of Education Law § 6530 (28). As to penalty, the ARB sustained the fines imposed by the Hearing Committee, overturned the order revoking petitioner's license to practice medicine, suspended petitioner's license to practice for two years (staying all but three months of such suspension) and placed petitioner on probation for a period of three years. Petitioner thereafter commenced the instant proceeding in this Court seeking to annul the ARB's determination.

Petitioner's primary argument on review is that his status as a nonpsychiatric physician precludes a finding that his decision to engage in consensual sexual relationships with patients E and F, during a period of time when he admittedly was treating such patients, constitutes moral unfitness to practice medicine. This very argument was considered and rejected by this Court in *Matter of Miller v Commissioner of Health for*

---

* The ARB did, however, substitute patient F for patient G with respect to this charge, finding that the Hearing Committee inadvertently misread certain references in the evidence to these patients. Hence, the ARB sustained the moral unfitness charge as to patients E and F.

*State of N. Y.* (270 AD2d 584). Although distinguishable in some respects from the matter before us, *Matter of Miller* nonetheless stands for the proposition that the ARB is vested with the authority to determine whether particular acts constitute misconduct within the meaning of the Education Law. Specifically, this Court held: "While the Legislature has expressly proscribed 'any physical contact of a sexual nature' between a psychiatrist and his or her patient * * * the absence of a corollary proscription in the practice of all other areas of medicine does not ipso facto constitute approval by the Legislature. Rather, the Legislature has obviously vested the State Education Department and its duly created State Board for Professional Medical Conduct, which together are responsible for '[establishing] an administrative unit which shall be responsible for the investigation, prosecution and *determination of alleged violations of professional conduct*' * * *, with the responsibility for judging the propriety of such conduct" (*id.*, at 585 [citations omitted; emphasis in original]).

Here, petitioner conceded that he engaged in a consensual sexual relationship with patient E while she was his patient. As to patient F, although petitioner testified that he did not enter into a consensual sexual relationship with her until after treatment ceased, petitioner made a contrary statement in a letter sent to the Office of Professional Medical Conduct. Hence, the ARB could rationally conclude that petitioner indeed engaged in such relationships with patients E and F during a period of time when he was rendering medical treatment. Contrary to petitioner's assertion, the ARB did not sustain the charge of moral unfitness based upon ethical guidelines and standards published after the fact but, rather, upon petitioner's pattern of engaging in sexual relationships with women who were his patients. Based upon our review of the record as a whole, we cannot say that the ARB's determination in this regard was irrational. Petitioner's remaining arguments with respect to this charge have been examined and found to be lacking in merit.

The remaining issues raised by petitioner on review do not warrant extended discussion. As to petitioner's challenge to the specifications of practicing with negligence on more than one occasion (fifth specification) and failing to maintain adequate patient records (24th and 25th specifications), both of which related to patients A and C, petitioner waived review of these issues by failing to raise them before the ARB. Although this Court indeed has the power to reach such issues in the interest of justice (*see, Matter of Khan v New York State Dept. of Health,*

274 AD2d 784, 785), we are not persuaded that justice compels such a result here. Were we to review petitioner's contentions, however, we would find his challenge to the enumerated specifications to be lacking in merit.

We reach a contrary conclusion, however, with respect to petitioner's assertion that the fines imposed were duplicative. This Court previously had held that "the mere fact that the identical conduct violate[s] two separate provisions of Education Law § 6530 [ ] does not justify the imposition of separate monetary fines" (*Matter of Colvin v Chassin*, 214 AD2d 854, 856 [footnote omitted]). Here, the facts upon which petitioner was found to have failed to maintain adequate patient records and to have practiced with negligence on more than one occasion are identical. Given that the fine imposed constituted an abuse of discretion (*see, id.*, at 856), we deem it appropriate to review petitioner's challenge in the interest of justice and reduce the fine, notwithstanding petitioner's failure to raise this issue before the ARB (*see, Matter of Khan v New York State Dept. of Health, supra*, at 785). Petitioner's remaining arguments, to the extent not specifically addressed, have been examined and found to be unpersuasive.

Cardona, P. J., Mercure, Peters and Rose, JJ., concur. Adjudged that the determination is modified, on the law, without costs, by annulling so much thereof as fined petitioner $20,000; said fine reduced to $10,000; and, as so modified, confirmed.