■ In the Matter of CHAIM D. CITRONENBAUM, Petitioner, v NEW YORK STATE DEPARTMENT OF HEALTH, Respondent. [756 NYS2d 359] —Kane, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Administrative Review Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

Petitioner, a licensed physician in New York since 1983 specializing in physical medicine and rehabilitation, was also licensed to practice medicine in New Jersey where, for a short time, he had a private practice. In July 2000, petitioner admitted his guilt to, inter alia, fraudulently submitting insurance claims as part of a consent order entered into with the New Jersey State Board of Medical Examiners. Under the terms of the consent order, petitioner's license to practice medicine was permanently revoked and he was required to pay a civil penalty of $50,000.[1] Petitioner entered into a consent order in March 1997 in New York wherein he admitted to promulgating advertising that is not in the public interest as alleged in the factual allegations then pending against him.[2] Petitioner's medical license was suspended for two years, with the suspension stayed and a period of probation substituted in its place, and a $10,000 fine was imposed. Petitioner completed his term of probation.

In December 2001, the Bureau of Professional Medical

---

1. Petitioner admitted that "on November 9, 1992 he consulted with 39 V&K patients but did not perform comprehensive examinations upon them yet prepared 39 fee slips, 39 narrative reports and 39 Attending Physician Reports on these patients for purposes of presenting them to the MTF/JUA and other carriers for payment, knowing that these fee slips, narrative reports and Attending Physician Reports, contained false or misleading information material to the claims. He further admits that said fee slips, narrative reports and Attending Physician Reports were, in fact, submitted for payment to the MTF/JUA and other carriers."

2. Specifically, petitioner admitted that he knowingly, intentionally and falsely advertised that: (1) he was board certified in physical medicine; (2) he was an attending physician at the Hospital for Joint Diseases in Manhattan; (3) he was an attending physician at Kingsbrook Hospital Medical Center in New York City; (4) he was an Assistant Professor at Downstate Medical Center; (5) he currently was or had been Director of Rehabilitation at Thomas Jefferson Home for Adults, Scharf Manor and New Broadview Manor; (6) he was a member of the American Congress of Rehabilitation and American Academy of Physical Medicine and Rehabilitation; and (7) he graduated from Downstate Medical School with honors.

Conduct (hereinafter BPMC) served petitioner with a notice of referral proceeding in a statement of charges pursuant to Public Health Law § 230 (10) (p). The charges allege that petitioner was found guilty of professional misconduct and surrendered his license to a professional disciplinary agency in New Jersey and that such conduct, if committed in New York, would constitute professional misconduct (*see* Education Law § 6530 [9] [b], [d]). The charges against petitioner were based solely on the New Jersey disciplinary action. In April 2002, a hearing was conducted on the charges before a Hearing Committee of the State Board for Professional Medical Conduct during which petitioner called witnesses to testify and submitted 51 letters on his behalf.

In May 2002, the Hearing Committee rendered its determination sustaining the charges, finding the violations based upon the New Jersey consent order. In assessing a penalty, the Hearing Committee considered both petitioner's conduct in New Jersey, as well as his conduct which resulted in the New York consent order in 1997. The Hearing Committee suspended petitioner's license to practice medicine for three years, staying all but three months of the suspension, with probation for three years and a fine of $10,000. The BPMC requested review of the Hearing Committee's determination by the Administrative Review Board for Professional Medical Conduct (hereinafter ARB). After considering the record and the parties' briefs, the ARB affirmed the Hearing Committee's determination that petitioner's conduct in New Jersey would constitute misconduct in this state, but the ARB overturned the Hearing Committee's penalty and revoked petitioner's license to practice medicine in New York. Petitioner initiated this proceeding pursuant to CPLR ,article 78 and Public Health Law § 230-c (5), seeking vacatur of the ARB's determination.

Petitioner first claims that the ARB was without jurisdiction to impose an increased penalty in that the Hearing Committee imposed a sanction within the range advocated by the counsel for respondent's Office of Professional Medical Conduct. At the conclusion of his summation, said counsel stated that "the appropriate sanction would at least include a suspension with a period of probation as a minimum if a revocation is not adjudged." We interpret this request to be a request for revocation but, if not, suspension with a period of probation as a minimum. Consequently, we do not agree that respondent's counsel did not request revocation before the Hearing Committee. In any event, the ARB is mandated to review whether the determination is consistent with the findings of

fact and conclusions of law and "whether or not the penalty is appropriate" (Public Health Law § 230-c [4] [b]), which may result in a harsher sanction than that imposed by the Hearing Committee (*see Matter of Kabnick v Chassin*, 89 NY2d 828, 829-830 [1996]).

Furthermore, our review of the record reveals that the determination of the ARB was neither arbitrary and capricious nor affected by an error of law or an abuse of discretion (*see Matter of Larkins v DeBuono*, 257 AD2d 714, 714-715 [1999]). The record provides ample support for the ARB's finding that petitioner did not admit to his own malfeasance in New Jersey but rather chose to lay the blame for his conduct on others with whom he worked. His explicit admission in the New Jersey proceeding belies his effort to deflect responsibility. When coupled with petitioner's multiple misrepresentations of his qualifications that resulted in the consent order in New York, the evidence supports the ARB's penalty enhancement. We likewise find that the penalty of revocation of petitioner's medical license based upon his fraudulent billing and deceptive advertising "is [not] so incommensurate with the offenses as to shock one's sense of fairness" (*id.* at 716; *see Matter of Dahl v New York State Dept. of Health*, 274 AD2d 619, 620 [2000]; *see also Matter of Adler v Bureau of Professional Med. Conduct, State of N.Y., Dept. of Health*, 211 AD2d 990, 993 [1995]).

Petitioner's due process rights were not violated by the administrative procedure. The Hearing Committee had a right to reasonably limit the number of witnesses and the length of time devoted to each witness's testimony (*see* Public Health Law § 230 [10] [p]). Here, the Administrative Law Judge did not unreasonably limit the presentation of petitioner's case and, in fact, offered petitioner an opportunity to present his argument for additional time and an adjournment, if necessary. The ARB properly limited its review to the hearing record and the briefs submitted by petitioner and respondent, including petitioner's reply brief (*see* Public Health Law § 230-c [4]). We further find that petitioner had adequate time to prepare his submissions to the ARB. Finally, we find that the Hearing Committee was properly constituted (*see Matter of Orens v Novello*, 99 NY2d 180 [2002]).

Petitioner's remaining contentions have been examined and found to be lacking in merit.

Crew III, J.P., Peters, Rose and Lahtinen, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.