■ In the Matter of RAUL N. LUGO, Petitioner, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Respondents. (And Another Related Proceeding.) [762 NYS2d 660] —Cardona, P.J. Proceedings pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review two determinations of the Administrative Review Board for Professional Medical Conduct which, inter alia, suspended petitioner's license to practice medicine in New York for six months and denied his motion for reconsideration.

In October 1999, the Bureau of Professional Medical Conduct (hereinafter BPMC) charged petitioner with specifications of professional misconduct alleging moral unfitness, willful patient abuse and fraudulent practice, all arising from his treatment and purported sexual relationship with patient A. Following a hearing, a Hearing Committee of the State Board for Professional Medical Conduct (hereinafter Committee) specifically credited the testimony of patient A over that of petitioner and sustained a single charge of moral unfitness. The Committee thereafter suspended petitioner's license to practice medicine for a period of five years, said suspension to be stayed after one month. Subsequently, the Administrative Review Board for Professional Medical Conduct (hereinafter ARB) affirmed the Committee's findings and conclusions, but overturned the Committee's penalty and suspended petitioner's license for six months. Petitioner commenced the first of the subject CPLR article 78 proceedings to challenge the ARB's determination. Thereafter, petitioner moved for a motion seeking reargument, renewal and recusal of the Administrative Law Judge (hereinafter ALJ) who presided over the Committee, which motion was denied. Consequently, petitioner commenced a second CPLR article 78 proceeding seeking review of that denial.

Initially, we note that in reviewing the ARB's determination, our inquiry is whether it is arbitrary and capricious, affected

by an error of law or constitutes an abuse of discretion (*see Matter of Citronenbaum v New York State Dept. of Health*, 303 AD2d 855, 857 [2003]; *Matter of Muncan v State Bd. for Professional Med. Conduct*, 296 AD2d 721, 722 [2002]). Here, patient A testified before the Committee that she sought petitioner's care for a large cancerous tumor in her abdomen. Patient A felt that petitioner's successful removal of that tumor saved her life. She stated that her relationship with petitioner ultimately became personal at what was ostensibly a business dinner between the two in the midst of her postoperative care. According to patient A, it was at this dinner that the two expressed a mutual attraction and, following the meal, kissed in his parked car. Patient A also claims that, after another appointment one month later, she and petitioner met at her apartment and had a sexual encounter. She gave detailed testimony concerning subsequent follow-up appointments and her professional and personal interactions with petitioner. Finally, patient A's gynecologist corroborated that testimony, attesting that patient A discussed with her the personal nature of her relationship with petitioner, in detail, some four years before the Committee proceedings.

While petitioner strenuously denies having an affair with patient A and has produced a letter from her indicating that the business dinner in question was her idea, these issues created questions of credibility which the Committee and the ARB were free to resolve in favor of the BPMC (*see Matter of Alexander v State Bd. for Professional Med. Conduct*, 287 AD2d 918, 920 [2001]). Given the findings that a consensual sexual relationship occurred in this case, the Committee and the ARB had the authority to further conclude that petitioner's role in the affair constituted moral unfitness (*see Matter of Selkin v State Bd. for Professional Med. Conduct*, 279 AD2d 720, 721-722 [2001], *appeal dismissed* 96 NY2d 823 [2001], *lv denied* 96 NY2d 928 [2001]; *Matter of Miller v Commissioner of Health for State of N.Y.*, 270 AD2d 584, 585 [2000]). Based upon this record, we cannot say that the ARB's determination was irrational.

Next, petitioner objects to the Committee's refusal to credit a report in his favor by psychiatrist Gene Abel that was generated upon the Committee's request and concluded, based upon, inter alia, the results of a polygraph test, that "the weight of the evidence does not support [petitioner] being involved in professional sexual misconduct with [patient A]." Although Abel never met patient A, he expressed concern over her perceived emotional state and questioned her credibility and

motivation. The report also recommended that petitioner seek psychiatric advice to help him "deal with continued accusations from [patient A]." Although the report was admitted into evidence, the Committee did not find it to be helpful inasmuch as "[i]t was never the intention of the [committee] to rely on Dr. Abel's report as to credibility of [petitioner] but merely as an aid to determine penalty." The Committee further found the report "tainted" by Abel's communications with petitioner's counsel. In its decision, the ARB deferred to the Committee's credibility determination and also discounted the value of Abel's report based upon, inter alia, its one-sided nature and reliance on scientifically-suspect polygraph results. In his reconsideration motion, petitioner challenged the Committee's indication that Abel's report was biased, noting that his counsel was instructed by the ALJ to contact Abel for purposes of facilitating the evaluation. Furthermore, Abel submitted an affidavit indicating that the information he obtained from petitioner's counsel was appropriate and no prior restrictions regarding that contact or the scope of the report were issued.

Our review of the record discloses the existence of misunderstandings and miscommunications concerning the purpose of the report and the role of petitioner's counsel. Nevertheless, the fact remains that "credibility issues are to be exclusively determined by the administrative factfinder" (*Matter of Pearl v State Bd. for Professional Med. Conduct*, 295 AD2d 764, 765 [2002], *lv denied* 99 NY2d 501 [2002]) and there is simply no basis to mandate a conclusion that the Committee was bound to accept Abel's findings as to petitioner's truthfulness (*see Matter of Hason v Department of Health*, 295 AD2d 818, 822 [2002]; *Matter of St. Lucia v Novello*, 284 AD2d 591, 593 [2001]; *Matter of Wahba v New York State Dept. of Health*, 277 AD2d 634, 635 [2000]). Thus, we cannot say on this record that the ARB abused its discretion in accepting the Committee's determination in reference to Abel's report. Moreover, even accepting petitioner's contention that the Committee erred in indicating that his counsel's communications with Abel were not appropriate, we cannot conclude that the alleged errors "resulted in prejudice which so permeated the hearing as to render it unfair" (*Matter of Sanchez v New York State Dept. of Health*, 293 AD2d 837, 838 [2002]).*

Petitioner's remaining arguments, including his claim that his motion for reconsideration was improperly denied, have been reviewed and found to be unpersuasive.

---

* We note that, at the time the report was admitted into evidence, the ALJ offered both counsel the opportunity to have independent evaluations by their own psychiatrists. Petitioner's counsel declined.

Crew III, Peters, Rose and Kane, JJ., concur. Adjudged that the determinations are confirmed, without costs, and petitions dismissed.