◼ In the Matter of JOEL NOVENDSTERN, Petitioner, v ADMINISTRATIVE REVIEW BOARD OF THE STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT, Respondent. [788 NYS2d 729]—

Lahtinen, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of respondent which, inter alia, permanently restricted petitioner's license to practice medicine in New York.

Petitioner challenges that aspect of a penalty imposed by respondent which permanently restricted his practice of medicine to a general hospital. He is a licensed physician who concentrates his practice in the area of obstetrics and gynecology. In February 2003, the Bureau of Professional Medical Conduct (hereinafter BPMC) charged him with gross negligence, patient abandonment, moral unfitness and failure to maintain records arising from his conduct during and following a termination of

pregnancy performed by dilation and evacuation in a clinic on patient A, who was more than 23 weeks pregnant.

The Hearing Committee of the State Board for Professional Medical Conduct sustained all the specifications, except moral unfitness, based upon its findings that petitioner failed to call an ambulance to transport patient A to a hospital after determining that her uterus had sustained a perforation of at least 5.8 centimeters, he permitted the removal of her intravenous line as she was transported to the hospital in a private car, and he failed to maintain accurate records of his treatment of patient A. The Hearing Committee suspended petitioner's license for three years, but stayed two years and nine months of such suspension, placing him on probation during such time on the condition he practice only in a hospital. Both the BPMC and petitioner sought review. Respondent affirmed the Hearing Committee's findings, but modified the penalty by shortening the stay to two years and six months and permanently restricting petitioner's practice to a general hospital as defined in Public Health Law § 2801 (10). Petitioner then commenced this proceeding contending that the permanent restriction is not appropriate under the circumstances.

Respondent is empowered to impose, as it did here, a more severe penalty than the Hearing Committee (*see Matter of Chen v Administrative Review Bd. of State Bd. for Professional Med. Conduct*, 3 AD3d 617, 617 [2004]; *Matter of Ross v New York State Dept. of Health*, 226 AD2d 863, 865 [1996]). Our review of the severity of the penalty is generally limited to whether it is so disproportionate to the offense that it shocks one's sense of fairness (*see Matter of Maglione v New York State Dept. of Health*, 9 AD3d 522, 525 [2004]; *Matter of Zharov v New York State Dept. of Health*, 4 AD3d 580, 580 [2004]). This analysis is necessarily dependent upon the particular facts and circumstances of each case (*see Matter of Bezar v DeBuono*, 240 AD2d 978, 979 [1997]; *Matter of Abdelmessih v Board of Regents of Univ. of State of N.Y.*, 205 AD2d 983, 986 [1994]).

Here, respondent found that, after petitioner performed an abortion on patient A, a sonogram revealed the 5.8-centimeter head of the fetus in the patient's abdomen under her liver. This confirmed a perforation of the patient's uterus of at least 5.8 centimeters, a condition characterized by Roy Schoen, the BPMC's expert, as potentially life threatening in the absence of immediate care. According to Schoen, whose testimony was credited by respondent, patient A faced the risk of shock or cardiac arrest caused by loss of blood and, in light of her age, there was a risk that she would not show signs of these condi-

tions until the problem was acute. The concern for patient A's internal bleeding was exacerbated by the fact that she had a preoperation hematocrit level of 30. Schoen opined, and petitioner's expert agreed, that a reasonably prudent physician would have summoned an ambulance to transport patient A in order to have trained medical personnel with her as she was moved and resuscitation equipment available. Respondent found no credibility in petitioner's contention that patient A's boyfriend became hostile and insisted on taking her to the hospital in his car. Petitioner's failure to call an ambulance was determined to be a serious deviation from accepted medical standards. Petitioner also failed to ensure that the intravenous line remained in patient A when she was moved from the clinic to a hospital. Schoen stated that this was the patient's "lifeline," permitting potentially life-saving medications to be administered immediately and, once removed, would cause delay and could be difficult to reinsert under the circumstances. Finally, petitioner's records—some of which were completed before the procedure was even commenced—were characterized by the Hearing Committee as "a sham, replete with inaccuracies."

Petitioner presented various arguments in mitigation, including the fact that he had no prior determinations of professional misconduct and the current matter involved only one patient. He also contended that he should be permitted to at least engage in nonsurgical medical practice outside a hospital setting. However, the underlying facts—particularly those supporting the findings of gross negligence and patient abandonment— reveal serious errors made at a clinic that exposed a patient to a life-threatening situation. Limiting petitioner's practice to a hospital will minimize the risk that similar conduct will occur in the future and, under such circumstances, we are unpersuaded that the penalty is shockingly unfair (*see Matter of Minielly v Commissioner of Health of State of N.Y.*, 222 AD2d 750, 751 [1995]; *see also Matter of Lawrence v DeBuono*, 251 AD2d 700, 702 [1998]).

Mercure, J.P., Spain, Mugglin and Kane, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.