■ In the Matter of MARK X. HUANG, Petitioner, v ADMINISTRATIVE REVIEW BOARD FOR PROFESSIONAL MEDICAL CONDUCT et al., Respondents. [981 NYS2d 220]—

Garry, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review

a determination of respondent Administrative Review Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

In June 2009, petitioner, a physician licensed to practice medicine in New York, pleaded guilty to healthcare fraud under federal law, a class C felony. The conviction arose from bills totaling more than $2.5 million that petitioner submitted over a five-year period to private insurers and government programs for services that he falsely claimed were provided by licensed physical therapists, when in fact the practitioners were less qualified. Petitioner was sentenced to a prison term of 12 months and one day, and was required to pay restitution and a fine and perform community service, with the prison term to be suspended if he paid at least $2 million in restitution within eight months. He made the required payment and was placed on supervised release for three years. Thereafter, the Bureau of Professional Medical Conduct (hereinafter BPMC) commenced a direct referral proceeding pursuant to Public Health Law § 230 (10) (p) alleging professional misconduct based upon this conviction (*see* Education Law § 6530 [9] [a] [ii]).* A Hearing Committee of the State Board for Professional Medical Conduct sustained the charge, suspended petitioner's medical license for nine months and imposed monitoring and continuing education requirements. Upon BPMC's petition for review, respondent Administrative Review Board for Professional Medical Conduct (hereinafter ARB) overturned the penalty and revoked petitioner's license to practice medicine. Petitioner commenced this proceeding seeking to annul the ARB's determination.

The record does not support petitioner's contention that the ARB improperly revoked his license as an "automatic" consequence of his crime, thus impermissibly usurping a legislative function and violating his substantive due process rights. The determination was not based solely upon the fact of petitioner's conviction, but was instead expressly premised upon its particular characteristics, including the magnitude of the fraud, its five-year duration and petitioner's admitted knowledge that his conduct was wrong. The determination enumerated the mitigating circumstances claimed by petitioner—such as the absence of substandard medical care, petitioner's cooperation with law enforcement and the allegedly commonplace nature of his bill-

---

* Testimony and evidence presented in an expedited professional misconduct proceeding based upon a violation of Education Law § 6530 (9) is addressed solely to the nature and severity of the penalty to be imposed (*see* Public Health Law § 230 [10] [p]; *Matter of Zahl v Daines*, 63 AD3d 1314, 1314 n [2009]).

ing practices in his ethnic community—and further noted the Hearing Committee's findings regarding his genuine remorse and willingness to accept responsibility for his actions. The conclusion that petitioner's license should nonetheless be revoked does not demonstrate that these factors were disregarded, but instead reflects an implicit conclusion by the ARB that they were outweighed by the gravity of his offense (*see Matter of Gold v DeBuono*, 237 AD2d 758, 759 [1997]; *Matter of Bing Tang v DeBuono*, 235 AD2d 745, 745 [1997]; *Matter of Kabnick v Chassin*, 223 AD2d 935, 937 [1996], *affd* 89 NY2d 828 [1996]). We further reject petitioner's contention that the finding by the ARB that he "preyed upon his patients" is unsupported by the record; although the patients received treatments, the record reveals that petitioner exploited his patients in order to receive payments to which he knew he was not entitled.

The ARB is vested with the authority to review a penalty to determine whether it is appropriate and legally permissible, and it is empowered to substitute its judgment for that of the Hearing Committee and impose a harsher sanction (*see* Public Health Law § 230-c [4] [b]; *Matter of Roumi v State Bd. for Professional Med. Conduct*, 89 AD3d 1170, 1173 [2011]; *Matter of Citronenbaum v New York State Dept. of Health*, 303 AD2d 855, 856-857 [2003]; *Matter of Tasher v Novello*, 299 AD2d 668, 669-670 [2002]). This Court's review of the penalty imposed "is generally limited to whether it is so disproportionate to the offense that it shocks one's sense of fairness" (*Matter of Novendstern v Administrative Review Bd. of State Bd. for Professional Med. Conduct*, 15 AD3d 701, 702 [2005]; *see Matter of Cohen v New York State Dept. of Health*, 65 AD3d 791, 793 [2009]; *Matter of Bursztyn v Novello*, 42 AD3d 596, 598 [2007]). Insurance fraud violates the public trust, and license revocation may be an appropriate remedy even when no patient has been harmed (*see Matter of Josifidis v Daines*, 89 AD3d 1257, 1261 [2011], *lv denied* 19 NY3d 801 [2012]; *Matter of Teruel v DeBuono*, 244 AD2d 710, 713 [1997]; *Matter of Singla v New York State Dept. of Health*, 229 AD2d 798, 800 [1996], *lv denied* 89 NY2d 809 [1997]). Considering petitioner's deliberate deceit in submitting false billings amounting to more than $2 million and the consequent significant financial loss to the programs involved during the five-year duration of this fraud, we find no reason to disturb the penalty (*see Matter of Baman v State of New York*, 85 AD3d 1400, 1402 [2011]; *Matter of Zharov v New York State Dept. of Health*, 4 AD3d 580, 580-581 [2004]; *Matter of Margini v DeBuono*, 255 AD2d 639, 640 [1998]).

Lahtinen, J.P., McCarthy and Rose, JJ., concur. Adjudged that

the determination is confirmed, without costs, and petition dismissed.