■ In the Matter of CLIFFORD D. MURRAY, Petitioner, v MARK CHASSIN, as Commissioner of the Department of Health of the State of New York, et al., Respondents. [623 NYS2d 951] —Yesawich Jr., J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of respondent Administrative Review Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

In August 1993, respondent State Board for Professional Medical Conduct (hereinafter the Board) charged petitioner with 15 specifications of professional misconduct, including charges of sexual abuse and harassment, fraudulent practice and moral unfitness; the charges stem from examinations he conducted of five patients during 1991 and 1992. A hearing was held before a Hearing Committee of the Board (hereinafter the Committee), which sustained all of the charges and ordered petitioner's license suspended for five years, with the last three years stayed, during which time petitioner would be permitted to practice under certain conditions designed to minimize the risk of further misconduct. On appeal, respondent Administrative Review Board for Professional Medical Conduct (hereinafter the ARB) upheld the Committee's determination but, at the urging of the Office of Professional Medical Conduct (hereinafter OPMC), overruled the penalty imposed by the Committee and revoked petitioner's license. Petitioner then commenced this CPLR article 78 proceeding seeking annulment of the ARB's determination.

To be confronted at the outset is whether the Administrative Law Judge's refusal to order production of the testifying patients' prior written complaints to the OPMC deprived petitioner of a fair hearing (see, Matter of McBarnette v Sobol, 83 NY2d 333). In addition to arguing that the Court of Appeals' holding in Matter of McBarnette v Sobol (supra) should be retroactively applied (a proposition that we have previously considered, and rejected [see, Matter of Finelli v Chassin, 206 AD2d 717, 718]), petitioner also claims that under the law in effect at the time of his hearing, as articulated in our decision in Matter of McBarnette v Sobol (190 AD2d 229, affd 83 NY2d 333, supra), disclosure of the complaints was mandated. Unlike the Court of Appeals, which interpreted the relevant statute (see, Public Health Law § 230 [11] [a]) in such a manner as to render it inapplicable to disclosure of the prior statements of witnesses who have testified in a disciplinary hearing (an interpretation that

would appear to require disclosure in the present case, if it were to be retroactively applied), this Court held only that under the particular circumstances presented by the underlying disciplinary proceeding in *McBarnette,* the accused physician's right to due process outweighed the need for confidentiality *(Matter of McBarnette v Sobol,* 190 AD2d 229, 232, *supra).* Such is not the case here, for petitioner was able to adequately probe the credibility of the testifying witnesses without resort to the complaints at issue, and consequently it cannot be said that he was deprived of due process *(see, Matter of Finelli v Chassin, supra).*

We do, however, find merit in petitioner's contention that the Committee's findings of misconduct with respect to patients C, D and E have no rational basis in the record and, accordingly, that the ARB's affirmance of those findings was arbitrary and capricious *(see, Matter of Pell v Board of Educ.,* 34 NY2d 222, 231; *Matter of Rudell v Commissioner of Health of State of N. Y.,* 194 AD2d 48, 50, *lv denied* 83 NY2d 754). The testimony of petitioner and his expert witness—no expert testimony was proffered by the OPMC—established that the examinations performed on patients C, D and E were medically warranted, given their complaints and presenting symptoms; nothing in the record contradicts, or sheds any doubt on, this evidence. Notably, petitioner did not perform any breast examination on patient E, and the examinations performed on patients C and D, on their respective first visits, were fully justified by patient C's pain and fibrocystic condition and patient D's markedly asymmetric breasts. These patients' breasts were not examined at the time of follow-up visits, and again, the examinations that they were given (ascultation of heart and lungs with stethoscope, palpation of lymph nodes in the axilla) were medically indicated.

Nor does the record substantiate respondents' representation that the examinations performed on these patients were in some respect improper. While respondents are correct in noting that the pertinent question is not whether the physical touching was inconsistent with a correct examination technique, but rather whether it was in fact done for an inappropriate reason, there is nevertheless no evidence in the record from which it may reasonably be inferred that petitioner touched—or looked at—any of these three patients for his own sexual gratification. Even if the patients' testimony is accepted in its entirety, it simply does not support an inference of lascivious intent, for while a person's intent can be inferred from his or her actions *(see, Matter of Sung Ho Kim v Board*

*of Regents,* 172 AD2d 880, 881-882, *lv denied* 78 NY2d 856), it may not be inferred merely from another person's response to what otherwise would be considered reasonable conduct. Thus, the mere fact that patient E became upset when petitioner looked at her bare breasts for three seconds while listening to her heart with a stethoscope, and at her suprapubic region for a similar amount of time (significantly, on presenting herself to petitioner she had complained of abdominal pain and stated that she had recently passed a kidney stone), does not provide justification for inferring that these observations were undertaken for other than medical purposes.

The same, however, cannot be said of the findings of misconduct with regard to patients A and B, for when their accounts are accepted, as they obviously were by the Committee, it is apparent that petitioner overstepped the bounds of appropriate physical examination, by subjecting patient B to numerous unnecessary breast examinations and by touching patient A's breasts in a manner that was without medical basis. From the nature of these actions, it may be inferred that petitioner engaged in them for his own sexual gratification; hence, the Committee's findings respecting these two patients are warranted.

Finally, while the ARB may impose a more severe penalty than that originally ordered by the Committee *(see, Matter of Wapnick v New York State Bd. for Professional Med. Conduct,* 203 AD2d 728), here, inasmuch as the penalty determination was based, in part, on findings of misconduct that in our view are meritless, the matter must be remitted for reconsideration of the appropriate sanction *(see, Matter of Hachamovitch v State Bd. for Professional Med. Conduct,* 206 AD2d 637, 639; *compare, Matter of Sharma v Sobol,* 188 AD2d 833, 836). On reconsideration, the ARB, when fashioning an appropriate penalty, should take into account whether rehabilitation may be possible, as was implicitly found by the Committee, and in doing so should consider any evidence of petitioner's subsequent conduct bearing on this issue *(see, Matter of Poglinco v Board of Regents,* 170 AD2d 903, 904).

Mikoll, J. P., Crew III, White and Casey, JJ., concur. Adjudged that the determination is modified, without costs, by annulling so much thereof as sustained the findings of misconduct as to patients C, D and E and imposed a penalty; matter remitted to respondent Administrative Review Board for Professional Misconduct for further proceedings not inconsistent with this Court's decision; and, as so modified, confirmed.