■ In the Matter of WALTER L. NIEVES, Petitioner, v MARK R. CHASSIN, as Commissioner of Health of the State of New York, et al., Respondents. [625 NYS2d 344] —Mercure, J. P. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of respondent Administrative Review Board for Professional Medical Conduct which, *inter alia,* suspended petitioner's license to practice medicine in New York.

In January 1994, respondent Administrative Review Board for Professional Medical Conduct sustained a finding of a Hearing Committee on Professional Conduct that petitioner, a physician specializing in neurology, was guilty of seven specifications each of fraud and failure to maintain accurate medical records, as a result of his failure to perform an adequate

neurological examination and contrary representation in his record and report thereof with regard to patients A through G, and one specification of negligence on more than one occasion, based upon the foregoing and upon petitioner's failure to appropriately monitor and treat patient F for Dilantin toxicity. Petitioner's license to practice medicine was suspended for two years, with the suspension stayed for the last 21 months thereof and a period of probation substituted therefor, and a fine totaling $45,000 was imposed.

Initially, we reject the contention that we are required to annul the Review Board's determination because of the refusal by the Administrative Law Judge (hereinafter ALJ) to receive patient G's original complaint in evidence and to permit inspection of patient F's complaint. Because both patients were known to petitioner and, in fact, testified at the hearing, we agree with petitioner that the primary purpose underlying Public Health Law § 230 (11) (a), to encourage victims of professional misconduct to come forward without fear of disclosure so that appropriate investigations might be pursued (see, Matter of McBarnette v Sobol, 83 NY2d 333, 338; Matter of Axelrod v Sobol, 78 NY2d 112, 115), was not served by this restriction (see, Matter of McBarnette v Sobol, supra). Nonetheless, these hearings were conducted prior to the Court of Appeals decision in Matter of McBarnette v Sobol (supra), which we have refused to apply retroactively (see, Matter of Murray v Chassin, 213 AD2d 858; Matter of Moss v Chassin, 209 AD2d 889, 891; Matter of Finelli v Chassin, 206 AD2d 717, 718), and we are not persuaded that petitioner was prejudiced by the ALJ's action. Notably, the present charges are far fresher than the 15 to 20-year old charges considered in Matter of McBarnette v Sobol (supra), petitioner's counsel had a copy of patient G's letter and was able to use it for impeachment purposes during cross-examination of that witness and, similarly, two letters that patient F had sent to petitioner, complaining of his failure to diagnose her Dilantin toxicity, were available for cross-examination. Under the circumstances, we conclude that petitioner was fully apprised of the claims against him and given the opportunity to fully test the credibility of these witnesses (see, Matter of Murray v Chassin, supra, at 859; Matter of Finelli v Chassin, supra, at 718).

Nor are we persuaded that the findings of guilt are arbitrary and capricious, affected by an error of law or an abuse of discretion (see, Matter of Moss v Chassin, supra, at 891-892; Matter of Rudell v Commissioner of Health of State of N. Y., 194 AD2d 48, 50, lv denied 83 NY2d 754). According to the

uncontroverted testimony of Lawrence Corbett, the expert produced by the Bureau of Professional Medical Conduct, appropriate examinations (in fact the very examinations that petitioner asserts he conducted) would necessarily take 45 minutes to one hour. Although the patients often had difficulty remembering the actual tests that were performed, they testified convincingly concerning the cursory nature and limited duration of the examinations performed by petitioner, not one of which took more than 15 to 20 minutes. This testimony was further corroborated by petitioner's own appointment book, which showed that he scheduled patients at 15-minute intervals, and the fact that petitioner made strikingly similar findings, including identical pulse rates and neurological examination results, for the six patients that he saw in his office. As for the additional charges with regard to patient F, Corbett testified that in light of the high dosage and evidence of toxicity on June 27, 1989, petitioner's course of action in failing to obtain patient F's serum level and to discontinue Dilantin was not in accordance with accepted standards of practice.

As a final matter, we conclude that the disciplinary penalty is by no means shocking to one's sense of fairness *(see, Matter of De Paula v Sobol,* 191 AD2d 822, 825).

Crew III, Yesawich Jr., Peters and Spain, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.