■ In the Matter of NICHOLAS GONZALEZ, Petitioner, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Respondents. [648 NYS2d 827] —Spain, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of respondent Administrative Review Board for Professional Medical Conduct which, *inter alia,* placed petitioner on probation and ordered him to participate in the State-sponsored Physician Prescribed Education Program.

In August 1993, petitioner, a physician who specializes in the area of nutritional therapy and who typically treats patients with advanced and incurable cancer, was charged by the Office of Professional Medical Conduct (hereinafter OPMC) with 15 specifications of misconduct including, *inter alia,* gross negligence, gross incompetence, negligence on more than one occasion, incompetence on more than one occasion and failing to maintain adequate records. The charges stemmed from petitioner's treatment of six incurable cancer patients (hereinafter patients A through F) who had either (1) exhausted conventional treatment options, or (2) rejected the only conventional treatment options remaining.

Thereafter, a Hearing Committee consisting of three

members of respondent State Board for Professional Medical Conduct (hereinafter the Board) found that petitioner was negligent and incompetent on more than one occasion by reason of failing to correctly interpret the signs and symptoms of disease progression in all six patients and by reason of his failure to (1) perform appropriate assessments with respect to the different stages of the disease in patients A and B, (2) perform adequate neurological evaluations for patients B and C, (3) perform an adequate physical examination for patient D, (4) obtain adequate laboratory or radiological evaluations for patients B, C, D and F, (5) perform sufficient follow-up monitoring for patient E, and (6) perform sufficiently frequent follow-up evaluations for patient A. Petitioner was also found to have failed to maintain accurate records with regard to patients A, D and F.

The Hearing Committee ordered the suspension of petitioner's license to practice medicine for three years, but stayed the suspension subject to petitioner's compliance with certain probationary conditions, including (1) supervision by OPMC, (2) completion of a certified retraining program, and (3) completion of 200 hours of community service in a hospice program. In addition, petitioner was ordered to pay a $15,000 fine. Both OPMC and petitioner sought review by respondent Administrative Review Board for Professional Medical Conduct (hereinafter the ARB), which sustained the Hearing Committee's findings regarding the charges. The ARB, while rejecting OPMC's request for revocation of petitioner's license as too harsh, sustained the Hearing Committee's order of community service and retraining in oncology, but modified the terms of the retraining requirement such that petitioner was directed to undergo an evaluation and submit to retraining in a Physician Prescribed Education Program; additionally, it overruled the imposition of the $15,000 fine. The ARB also denied petitioner's request for a new hearing pursuant to the Alternative Medical Practice Act (*see*, L 1994, ch 558). Petitioner commenced this CPLR article 78 proceeding seeking, *inter alia*, annulment of the ARB's determination or, in the alternative, remittal for a new hearing.

Initially, we reject petitioner's assertion that the Alternative Medical Practice Act mandates that he is entitled to a new hearing before a Hearing Committee which consists of at least one nonconventional physician. The Alternative Medical Practice Act, which took effect July 26, 1994, amended the Public Health Law and the Education Law and requires that at least two of the physicians on the Board be "physicians who

dedicate a significant portion of their practice to the use of non-conventional medical treatments" (Public Health Law § 230 [1]). Petitioner's hearing concluded in March 1994 and the determination of the Hearing Committee is dated June 8, 1994. In light of the express language in the legislation that it shall take effect immediately (*see*, L 1994, ch 558, § 5) and in the absence of any indication of legislative intent to provide retroactivity, we conclude that the legislation should only be applied prospectively (*see*, *Matter of Moynihan v New York State Employees' Retirement Sys.*, 192 AD2d 913, 914; *Matter of Lusardi v Eugene Lusardi, M.D., P. C.*, 167 AD2d 3, 4; *see also*, McKinney's Cons Laws of NY, Book 1, Statutes § 52). Moreover, even if a remittal were ordered, the legislation does not guarantee petitioner, as a nonconventional physician, that a nonconventional physician will be on the Hearing Committee which determines his case (*see*, L 1994, ch 558). Rather, Public Health Law § 230 (1), as amended, simply requires that the Board, consisting of at least 18 physicians and seven lay members (*see*, Public Health Law § 230 [1]), contain at least two nonconventional physicians among its many members.

Petitioner further asserts that the Board's determination should be annulled because the charges reflect a bias against alternative medicine and because his professional conduct was assessed according to the standards to which conventional practitioners are held, which are inconsistent or irrelevant to his therapy, especially in light of the fact that his patients fully consented to such nonconventional therapy. In our view petitioner's assertions are without merit. Both the Hearing Committee and the Board recognized that alternative medicine involves a different treatment regime, but held him to the same standard of care to which all physicians in New York are held. Without questioning the merits of petitioner's therapeutic protocol, the Board noted that: "physicians must still possess the same basic scientific knowledge of the nature of disease and the disease process. That knowledge is a standard to which all physicians are held. That standard and other basic standards, in areas such as record keeping and informed patient consent, do not vary based on the treatment regimes. In the treatment of all the patients in this case, [petitioner] demonstrated that he lacked the basic understanding of the disease from which all the patients were suffering." Notably, "it is well settled that a patient's consent to or even insistence upon a certain treatment does not relieve a physician from the obligation of treating the patient with the usual standard of care" (*Matter of Metzler v New York State Bd. for Professional Med. Conduct*, 203 AD2d 617, 619, *appeal dismissed* 83 NY2d

999; *see, Matter of Van Gaasbeek v Chassin*, 198 AD2d 572, *lv denied* 82 NY2d 665). Furthermore, petitioner has failed to present any persuasive evidence to support his assertion of bias (*see, Matter of Warder v Board of Regents*, 53 NY2d 186, 197, *cert denied* 454 US 1125).

Petitioner also contends that the Administrative Officer (hereinafter the AO) erred in his evidentiary rulings by excluding evidence which included petitioner's dissertation regarding the theory and protocol underlying his practice; a paper containing case studies of patients of a Texas dentist, William Kelley, each of whom had undergone the same therapeutic protocol and who had successful results; and articles on the effectiveness of conventional treatments for advanced cancers. Petitioner also argues that the AO improperly refused to allow cross-examination of OPMC's key medical expert regarding the conduct of the other physicians who treated patients A through F.

Upon review of the record we find petitioner's assertions to be unavailing. In our view, the areas into which counsel sought to cross-examine were irrelevant to the issue at hand; additionally, the two physicians who offered expert testimony on behalf of petitioner, both of whom are highly respected in their respective fields, testified at great length regarding the same issues which the excluded exhibits allegedly addressed. In any event, viewing the record as a whole, the AO's rulings, even if erroneous, were harmless in that they were not so egregious as to " ' "infect[ ] the entire proceeding with unfairness" ' " (*Matter of Morrissey v Sobol*, 176 AD2d 1147, 1150, *lv denied* 79 NY2d 754, quoting *Matter of Morfesis v Sobol*, 172 AD2d 897, *lv denied* 78 NY2d 856, quoting *Matter of Ackerman v Ambach*, 142 AD2d 842, 845, *affd* 73 NY2d 323; *see, Matter of Martinez-Urrutia v Szetela*, 216 AD2d 700, 701, *lv denied* 86 NY2d 710).

A physician is guilty of negligence on more than one occasion under Education Law § 6530 (3) when he or she has "failed to exercise the care that a reasonably prudent physician would exercise under the circumstances" (*Matter of Bogdan v New York State Bd. for Professional Med. Conduct*, 195 AD2d 86, 88, *appeal dismissed, lv denied* 83 NY2d 901). A physician may be found guilty of incompetence on more than one occasion under Education Law § 6530 (5) on the same underlying facts regarding his or her conduct (*see, Matter of Colvin v Chassin*, 214 AD2d 854, 856). The standard of review in such cases is stringent (*see, Matter of Chua v Chassin*, 215 AD2d 953, *lv denied* 86 NY2d 708; *Matter of Nieves v Chassin*, 214 AD2d

843, 844, *lv denied* 86 NY2d 703; *Matter of Moss v Chassin*, 209 AD2d 889, 891-892, *lv denied* 85 NY2d 805, *cert denied* 516 US 861; *Matter of Santasiero v Sobol*, 199 AD2d 835, *lv denied* 83 NY2d 754) and credibility issues regarding expert witness testimony will not be disturbed unless irrational (*see, Matter of Minielly v Commissioner of Health of State of N. Y.*, 222 AD2d 750, 751). A medical record which "fails to convey objectively meaningful medical information concerning the patient treated to other physicians is inadequate" (*Matter of Mucciolo v Fernandez*, 195 AD2d 623, 625, *lv denied* 82 NY2d 661; *see, Matter of Revici v Commissioner of Educ. of State of N. Y.*, 154 AD2d 797, 800). A careful review of the record reveals that there is sufficient testimonial proof and ample objective evidence to provide a rational basis of fact to support the Board's determination that petitioner was guilty of negligence and incompetence on more than one occasion by failing, *inter alia*, to correctly interpret the signs and symptoms of the progression of the cancer with respect to patients A through F and that he was guilty of failing to maintain accurate medical records with respect to patients A, D and F.

Finally, we reject petitioner's assertion that the ARB's direction that he perform 200 hours of service in a hospice program and that he undergo educational training courses in the field of oncology is a "harassing and wasteful interference with his practice". In reviewing the propriety of physician discipline, this Court is limited to assessing whether the penalty imposed "is so incommensurate with the offense as to shock one's sense of fairness" (*Matter of Chua v Chassin, supra*, at 956; *see, Matter of Colvin v Chassin, supra*, at 855; *Matter of Adler v Bureau of Professional Med. Conduct*, 211 AD2d 990, 993; *Matter of Jean-Baptiste v Sobol*, 209 AD2d 823, 825) and each case is to be judged according to its own facts and circumstances (*see, Matter of Binenfeld v New York State Dept. of Health*, 226 AD2d 935, 937; *Matter of Abdelmessih v Board of Regents*, 205 AD2d 983, 986; *Matter of Edelman v Sobol*, 174 AD2d 896, 897-898, *appeal dismissed* 78 NY2d 1006).

Here, the ARB's determination ordering petitioner to undergo an evaluation and retraining in oncology was based on its conclusion that, while "the vast majority of [petitioner's] patients suffer from cancer[,] [petitioner] * * * lacks the basic understanding of the nature of that disease". Its determination that petitioner perform 200 hours of hospice service was based on its finding that "such service will acquaint [petitioner] with broader aspects of practice, including the treatment of the terminally ill and cycle of death, and will supplement the

formal * * * [r]etraining". Although Education Law § 6527 (4) (e) provides, in relevant part, that article 131 "shall not be construed to affect or prevent * * * [t]he physician's use of whatever medical care, conventional or non-conventional, which effectively treats human disease, pain, injury, deformity or physical condition", the penalty imposed on petitioner does not contradict such provision—which was also made effective July 26, 1994 (see, L 1994, ch 558, § 1).

In our view, the penalty imposed will only serve to improve petitioner's capability to better diagnose and perhaps distinguish between true metastasis of cancer in his patients and the disguised side effects of his nonconventional therapy. Therefore, contrary to petitioner's argument, the penalties imposed on him were not so harsh as to rise to the level of being shockingly disproportionate (see, Matter of Mansur v State of N. Y. Dept. of Health Bd. for Professional Med. Conduct, 223 AD2d 774, 776; Matter of Park v New York State Dept. of Health, 222 AD2d 959, 961; Matter of Park v Board of Regents, 222 AD2d 946, 948).

Mikoll, J. P., Mercure, Peters and Carpinello, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.