■ In the Matter of GREGORY O'KEEFE, III, Petitioner, v STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT, Respondent. [726 NYS2d 183] —Carpinello, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Hearing Committee of respondent which revoked petitioner's license to practice medicine in New York.

A Hearing Committee of respondent sustained six specifications of professional misconduct against petitioner, an internist, which included gross negligence, gross incompetence, negligence on more than one occasion and incompetence on more than one occasion (*see*, Education Law § 6530 [3]-[6]). The spec-

ifications relate to petitioner's care of nine patients (hereinafter patients A through I) between 1995 and 1998 while he was employed by Bassett Healthcare in Herkimer County.* The Hearing Committee ordered that his license to practice medicine be revoked, finding such sanction the only one appropriate to adequately protect the public. Petitioner commenced this CPLR article 78 proceeding challenging the determination, arguing that the findings of professional misconduct are not supported by substantial evidence and that the penalty is disproportionate to the charges and shocking to one's sense of fairness.

Upon our review of the record, particularly bearing in mind that the assessment and resolution of conflicting expert testimony and witness credibility are within the exclusive province of the Hearing Committee (*see, e.g., Matter of Barad v State Bd. for Professional Med. Conduct*, 282 AD2d 893; *Matter of Reddy v State Bd. for Professional Med. Conduct*, 259 AD2d 847, 849, *lv denied* 93 NY2d 813; *Matter of Adler v Bureau of Professional Med. Conduct*, 211 AD2d 990), we conclude that substantial evidence exists to support the findings of professional misconduct (*see, Matter of Gross v DeBuono*, 223 AD2d 789; *Matter of Adler v Bureau of Professional Med. Conduct, supra*). The expert witnesses for the Bureau of Professional Medical Conduct testified at the hearing that petitioner deviated from accepted standards of medical care during the course of his treatment of each of these nine patients. The Hearing Committee specifically found these witnesses to be credible and "gave great weight to their opinions."

As to patient A, the record reveals that petitioner improperly managed her partially collapsed lung, a condition he created after administrating a trigger point injection. Indeed, the testimony, as credited by the Hearing Committee, reveals that petitioner knew he had punctured patient A's lung during the injection, thereby likely causing the pneumothorax, but failed to take proper steps to protect her in the event of respiratory distress. As to this same patient, petitioner also failed to address her subtherapeutic levels of two different drugs (one of which placed her at risk of an embolic stroke) and he further failed to correctly interpret the results of a thyroid stimulation hormone test.

The record also supports the findings that petitioner incorrectly diagnosed patients B and C with congestive heart fail-

---

* Petitioner has only been licensed to practice medicine in this State since 1994. He spent the first 20 years in medicine serving as the sole physician on a small island off the coast of Maine.

ure, prescribed each a drug that was contraindicated and further failed to consult a cardiologist concerning them, which was necessary under the circumstances. As to patient D, petitioner failed to properly monitor and address his abnormal potassium levels, as well as document his alleged difficulty in communicating with this patient and the patient's alleged failure to comply with medical recommendations. As to patient E, the record reveals that petitioner incorrectly interpreted a test to detect parvovirus (he read the test as showing "an acute powerful virus infection" when in fact no present infection existed) and then improperly prescribed intravenous immunoglobulin. There is no dispute that, as to patients F through I, petitioner failed to correctly interpret a cosyntropin stimulation test and then compounded the error by prescribing cortisone to each patient.

Except with respect to his misinterpretation of the cosyntropin stimulation test, petitioner defended his diagnoses and treatment regimens for each patient. Moreover, while he too presented expert testimony at the hearing, his expert witness, while complimentary of certain aspects of petitioner's practice of medicine, was hardly effusive in his opinions concerning the appropriateness of petitioner's diagnoses and treatment plans of the subject patients.

The more difficult question is whether the penalty of license revocation is appropriate. With respect to this issue, petitioner repeatedly points out that he suffered from severe hypothyroidism during the time period in question and that the local community in which he *now* serves has "express[ed] its hurt, anger and sense of outrage over the potential loss of a physician whose services are vital to the well-being of over 5,000 patients, many geriatric, fragile and very sick." The genuineness of these contentions notwithstanding, we note that we are limited by the *record* before the Hearing Committee in assessing whether substantial evidence supports the findings of professional misconduct *and* the appropriateness of the penalty (*see, Matter of Kelly v Safir*, 96 NY2d 32; *Matter of Featherstone v Franco*, 95 NY2d 550, 554).

At the hearing, petitioner neither argued nor proved that any medical condition on his part affected his medical judgment or treatment of any patient (*see,* Public Health Law § 230 [10] [c], [f]; State Administrative Procedure Act § 301 [4]), such that mitigating circumstances justified a lesser punishment. Nor did he present significant testimony or evidence concerning his current practice of medicine which also might have impelled the Hearing Committee to impose a less

severe penalty. Indeed, the Hearing Committee specifically considered less drastic penalties and concluded, based on the "breadth and depth" of petitioner's deficiencies and his lack of insight into his problems, that same would not be sufficient to protect the public. Given the deficiencies in petitioner's medical knowledge and treatment that the administrative record before us demonstrates—deficiencies which can only be characterized as fundamental and pervasive and which bear directly on his competency to practice medicine (cf., Matter of Bottros v DeBuono, 256 AD2d 1034, 1036)—we cannot say that the penalty imposed is so disproportionate to the offenses as to shock our judicial conscience thus constituting an abuse of discretion as a matter of law (see, Matter of Kelly v Safir, supra; Matter of Featherstone v Franco, supra; see also, Matter of Lawrence v DeBuono, 251 AD2d 700, 702-703).

Crew III, J. P., Peters, Rose and Lahtinen, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.