■ In the Matter of JAMILLE PERESS, Petitioner, v ADMINISTRATIVE REVIEW BOARD FOR PROFESSIONAL MEDICAL CONDUCT, Respondent. [743 NYS2d 577] —Spain, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of respondent which revoked petitioner's license to practice medicine in New York.

Petitioner, a physician licensed in New York specializing in

urology, was charged by the Bureau of Professional Medical Conduct with moral unfitness, gross negligence, negligence on more than one occasion, gross incompetence, fraudulent practice, making or filing false reports, incompetence on more than one occasion, ordering unwarranted tests and treatment and failure to maintain records. The charges—stemming from petitioner's pro bono treatment of 24 mentally disabled residents of an adult long-term residential care facility—allege that petitioner, acting in concert with another urologist, caused medically inappropriate prostate surgery to be performed on these patients at a hospital of which he was a part owner and at which he was chair of the Urology Department.

Following a hearing, the Hearing Committee of the State Board for Professional Medical Conduct (hereinafter Committee) sustained all of the charges except that of practicing with gross incompetence, and suspended petitioner's license to practice medicine for five years. On review, respondent overturned the findings that petitioner practiced medicine fraudulently and willfully filed false reports, otherwise affirmed the Committee's determination and increased the penalty by revoking petitioner's license to practice medicine. Thereafter, petitioner commenced the instant proceeding challenging respondent's determination.

Respondent's determination must be upheld unless we find it to be "arbitrary and capricious, affected by an error of law or an abuse of discretion" (*Matter of Brown v New York State Dept. of Health*, 235 AD2d 957, 957-958, *lv denied* 89 NY2d 814; *see*, *Matter of Kaphan v DeBuono*, 268 AD2d 909, 911; *Matter of Chua v Chassin*, 215 AD2d 953, 954-955, *lv denied* 86 NY2d 708). By this standard, it is not this Court's role to "decide credibility issues or weigh the testimony of expert witnesses" (*Matter of Brown v New York State Dept. of Health*, *supra* at 958) but, rather, to determine "whether the administrative determination has a rational basis supported by fact" (*id.* at 958). Upon our review of the record, we find support for the Committee's determination as sustained by respondent.

Petitioner first alleges that the Committee's and respondent's conclusions are flawed because they are based on the mistaken premise that petitioner referred 20 patients to surgery out of a total of 30 to 40 patients screened whereas petitioner, in contrast, asserts that he screened over 100 residents of the residential facility. In its decision, the Committee justifiably relied only on those visits to the facility which petitioner documented in his office records, during which he reported having screened approximately 40 patients (*see generally*, *Matter of Suslovich v*

*New York State Educ. Dept.*, 174 AD2d 802, 803-804). In any event, there is no indication that the percentage of patients that petitioner referred for surgery after screening was a determinative factor in either the decision of the Committee or respondent. Indeed, the specifications of misconduct are supported by record evidence of the nature and quality of the care and treatment which petitioner provided to the individuals who he referred for surgery. Accordingly, even if accurate, petitioner's argument that the Committee's finding on the number of patients screened is unsupported and is not helpful to his position in this proceeding.

Next, petitioner challenges the finding that he committed misconduct in failing to obtain the informed consent of the patients prior to the surgeries performed—either transurethral resections of the prostate (hereinafter TURP) or transurethral incisions of the prostate (hereinafter TUIP). Specifically, petitioner argues that because he was merely referring the patients rather than performing the surgical procedures, it was not his obligation to explain the risks, benefits or alternatives to the procedure and, in any event, the record does not support the finding that he failed to obtain the informed consent of the patients he treated. While authority exists supporting petitioner's argument that a physician who merely refers a patient to another physician will not be held liable for the treating physician's failure to obtain informed consent (*see, Shkolnik v Hospital for Joint Diseases Orthopaedic Inst.*, 211 AD2d 347, 351, *lv denied* 87 NY2d 895; *Spinosa v Weinstein*, 168 AD2d 32, 39), here the Committee found that petitioner agreed to obtain the patients' informed consent. This finding is supported by testimony of the physician to whom petitioner referred the patients for surgery—which the Committee was entitled to credit (*see, Matter of Brown v New York State Dept. of Health, supra* at 958)—that petitioner agreed to obtain the informed consent of these patients, as well as the fact that petitioner had the patients execute written consent forms prior to being admitted to the hospital, on which petitioner was identified as the physician who explained the procedure to the patient. Under these circumstances, we conclude that petitioner had a responsibility to obtain the informed consent of these patients (*see generally, Parvi v City of Kingston*, 41 NY2d 553, 559; *Weaver v Trackey*, 272 AD2d 705, 707).

Record evidence exists, moreover, to support the Committee's determination that petitioner had the patients execute the written consent forms at a time when, due to the preliminary nature of his evaluations of the patients, he lacked the

pertinent information to adequately explain the patients' conditions and options. Petitioner specifically challenges the Committee's findings with respect to two patients (referred to in the administrative record as patient numbers 12 and 16) because of a claimed dearth of evidence that he treated or referred those patients for surgery. Evidence was introduced at the hearing establishing that petitioner signed the certification on the written consent forms of these patients, despite his admission that he never evaluated or treated them. Accordingly, respondent's decision to affirm the Committee's findings that petitioner did not adequately obtain the informed consent of his patients is supported by the record.

We next turn to petitioner's argument that respondent erred in adopting the Committee's findings that his evaluations of the residential facility patients were inadequate. Again, so long as the Committee's findings have a rational basis supported by facts in the record, we will uphold respondent's determination, even where the record would also support a contrary conclusion (*see, Matter of Wilkins v New York State Dept. of Health*, 289 AD2d 634, 635, *lv denied* 97 NY2d 612; *Matter of Spartalis v State Bd. for Professional Med. Conduct*, 205 AD2d 940, 942, *lv denied* 84 NY2d 807). The Committee found that at the initial screening at the residential facility, petitioner spent approximately five minutes with each patient, during which time he did not conduct a physical exam or any diagnostic tests, but simply questioned the patients concerning incontinence and/or prostate difficulties. Thereafter, petitioner arranged to have certain patients transported to his office in groups for further evaluation and then directly to the hospital for surgery. Specifically, the Committee found that seven of the patients referred for surgery by petitioner had spent, as a group, less than two hours at petitioner's office before being transported to the hospital for surgery. These facts are supported by testimony and exhibits introduced at petitioner's hearing.

Based on this evidence and expert testimony, the Committee determined that there was insufficient time for petitioner to have performed all the necessary components of a urological examination and to have discussed the issues necessary to obtain informed consent. An expert witness, relying on petitioner's records and hospital records for the patients at issue, testified that petitioner failed to perform adequate urological examinations and, as a result, caused medically inappropriate TURPs and TUIPs to be performed. Specifically, the expert opined that petitioner failed to take adequate histories of the

patients, improperly measured postvoid residuals by single image ultrasounds, failed to perform urodynamic studies in two instances where the patients' histories called for such a study, improperly relied on visual assessment through cystoscopy to diagnose prostate obstructions and failed to order an appropriate trial of medical management therapy prior to referring the patients for surgery. Thus, given the factual basis in the record to support the Committee's finding that petitioner's evaluation of the patients fell below medically acceptable standards, we will not disturb respondent's decision to sustain that finding (*see, Matter of Schoenbach v DeBuono*, 262 AD2d 820, 822, *lv denied* 94 NY2d 756; *Matter of Lewis v DeBuono*, 257 AD2d 787, 788-790; *cf., Matter of Franco v State Bd. for Professional Med. Conduct*, 240 AD2d 869, 871).

Petitioner also contends that respondent's failure to affirm the Committee's findings that he practiced medicine fraudulently and willfully filed false reports undermines all of the other findings of misconduct, because the charges were all premised on petitioner's alleged participation in a fraudulent scheme to perform unnecessary surgery on the residential facility patients. Respondent reversed the Committee's determination with respect to the charges of fraud and false reporting because the Committee failed to make the necessary factual finding that petitioner, as charged, knowingly and falsely represented information in the patients' medical records. Contrary to petitioner's argument, this finding is not inconsistent with the findings of misconduct which respondent sustained. The sustained specifications of misconduct were not exclusively premised on fraudulent conduct but, rather, were also based on petitioner's failure to render appropriate and adequate medical care to his patients. Indeed, the charges involving negligence, incompetence, ordering unwarranted treatment and failure to maintain records require no showing of intentional misconduct and, as discussed above, have a factual basis in the record. Nor is the conclusion that petitioner engaged in conduct evincing moral unfitness to practice medicine contrary to respondent's determination not to sustain the charges of fraud and false reporting. It was not necessary for the Committee to make a finding that petitioner knowingly made false representations in the patients' records to conclude, as it did, based on the other conduct charged, that petitioner's wholesale group approach to evaluating and treating these vulnerable patients deprived them of the individualized care which every patient deserves and, in that manner, violated the medical profession's moral standards.

Turning to petitioner's contention that revocation of his

license was inappropriate, we note that our inquiry in reviewing the propriety of a penalty imposed as physician discipline is limited to whether the penalty " 'is so incommensurate with the offense as to shock one's sense of fairness' " (*Matter of Gonzalez v New York State Dept. of Health*, 232 AD2d 886, 890, *lv denied* 90 NY2d 801, quoting *Matter of Chua v Chassin*, 215 AD2d 953, 956, *lv denied* 86 NY2d 708). Here, we cannot say that respondent's decision to revoke petitioner's license is unreasonable in light of its finding that petitioner showed no remorse for his conduct and, thus, if permitted to return to practice, has the potential of repeating the conduct and thereby presenting a danger to the public. On these facts, it is of no moment that petitioner was offering his services pro bono, as the residential facility patients were entitled to the same degree of care that any patient compensating petitioner for his services should expect. Accordingly, the decision to revoke petitioner's license was not incommensurate to the offense (*see, Matter of Dolin v State Bd. for Professional Med. Conduct*, 274 AD2d 862, 863-865, *lv denied* 95 NY2d 770; *Matter of Lawrence v DeBuono*, 251 AD2d 700, 702-703).

We have considered and rejected petitioner's remaining contentions, including his assertion that he was prejudiced by respondent's mistake in stating in its decision that the proceeding against petitioner was commenced by a summary order (*see,* Public Health Law § 230 [12] [a]). We find no indication that respondent's determination was biased or otherwise based upon any factor outside of the record.

Mercure, J.P., Crew III, Peters and Lahtinen, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.