■ In the Matter of RICHARD E. PEARL, Petitioner, v NEW YORK STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT, Respondent. [744 NYS2d 64] —Mugglin, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the

Administrative Review Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

On September 5, 2000, the Bureau of Professional Medical Conduct (hereinafter BPMC) charged petitioner with 24 specifications of professional misconduct arising from his treatment of six patients (hereinafter patients A, B, C, D, E and F) between 1986 and 1995, his alteration of patient F's medical records and his false statements on an application for hospital privileges. After the close of evidence, the Hearing Committee of respondent (hereinafter Committee) sustained 10 of these specifications. Among these were that petitioner had committed gross negligence in his care of patient B, that he had failed to maintain records which accurately reflected the evaluation and treatment of patients A, B, C, D and E, and that he had committed fraud by altering patient F's medical record and by misrepresenting the termination of his privileges at the Hospital for Joint Diseases when applying for privileges at another institution. As a result, the Committee fined petitioner $50,000 and suspended his medical license for three years, the latter two years of which were stayed. Subsequently, the Administrative Review Board for Professional Medical Conduct (hereinafter ARB) affirmed the Committee's findings and conclusions, but overturned its penalty of suspension and fine and, instead, revoked petitioner's license to practice medicine. Petitioner then instituted the instant CPLR article 78 proceeding seeking review of the ARB's determination.

In his 67-page brief, petitioner makes no argument concerning the Committee's findings of inadequate or incomplete recordkeeping. His attacks on the Committee's findings of gross negligence, fraud and deliberate false reporting are premised on his claim that there is no basis for the Committee finding that he lacked credibility. Even if there might be some merit to petitioner's claim that the Committee erroneously decided that he had lied about his authorship of certain medical papers and his board certification status, petitioner's testimony on those issues is not particularly relevant to the Committee's determination that he lacked credibility with respect to the gross negligence, fraud and deliberate false reporting charges. Moreover, credibility issues are to be exclusively determined by the administrative factfinder and are outside the scope of this Court's review (*see*, *Matter of Richstone v Novello*, 284 AD2d 737, 737; *Matter of O'Keefe v State Bd. for Professional Med. Conduct*, 284 AD2d 694, 695, *lv denied* 96 NY2d 722; *Matter of Wahba v New York State Dept. of Health*, 277 AD2d 634, 635;

*Matter of Corines v State Bd. for Professional Med. Conduct,* 267 AD2d 796, 799, *lv denied* 95 NY2d 756).

In addition, it is well settled that our review of an ARB determination is whether the " 'determination was made in violation of lawful procedure, was affected by an error of law[,] or was arbitrary and capricious or an abuse of discretion' " (*Matter of Rudell v Commissioner of Health of State of N.Y.,* 194 AD2d 48, 50, *lv denied* 83 NY2d 754, quoting CPLR 7803 [3]). Applying that standard, we conclude that there is a rational basis for the finding that petitioner was grossly negligent in electing to proceed with patient B's total hip replacement despite clear evidence of a cancerous lesion, thereby delaying treatment therefor. The finding of fraud is similarly supported. A physician is guilty of fraud when there is evidence of an intentional misrepresentation or concealment of a known fact with intent to deceive (*see, Matter of Choudhry v Sobol,* 170 AD2d 893, 894). With respect to patient F's records, there is credible evidence that petitioner obtained this closed record from the medical records room, inserted a notation that "risks, alternatives and benefits" of certain treatments had been explained to her, and then, after discovering that an unaltered copy of the record had already been sent to the patient's attorney, petitioner used "white-out" to eliminate the alteration. Also, based on petitioner's own testimony and the documentary proof, the Committee appropriately concluded that petitioner falsely indicated that he was in good standing with the Hospital for Joint Diseases when he applied for appointment to the medical staff of one of the hospitals under the control of Beth Israel Medical Center.

Parenthetically, we find no credible basis for petitioner's claim that his due process rights were violated because of a 14-year delay between his care of patient B and the filing of these charges. There is no statute of limitations and the doctrine of laches does not apply to physician disciplinary proceedings (*see, Matter of Schoenbach v DeBuono,* 262 AD2d 820, 823, *lv denied* 94 NY2d 756; *Matter of Reddy v State Bd. for Professional Med. Conduct,* 259 AD2d 847, 848, *lv denied* 93 NY2d 813). Therefore, petitioner must make a showing of actual prejudice to succeed in this contention (*see, Matter of Kashan v DeBuono,* 262 AD2d 817, 818). Here, although petitioner's office records were no longer available, he testified in great detail from the hospital records of patient B concerning "one of the most unusual cases [of his] career." As the negligent treatment charge only involved treatment of the patient while in the hospital, petitioner has failed to show how any purportedly un-

available documents would exonerate him or assist in his defense (*see, Matter of Giffone v DeBuono*, 263 AD2d 713, 714-715), and petitioner has failed to show that the unavailability of Michael Lewis, patient B's treating oncologist, would have altered the outcome by Lewis's favorable testimony on his behalf (*see, Matter of Kashan v DeBuono, supra* at 818).

Finally, the penalty of revocation imposed is "not so shocking to one's sense of fairness nor disproportionate to the misconduct to be deemed irrational as a matter of law" (*Matter of Schoenbach v DeBuono, supra* at 823; *see, Matter of Kole v New York State Educ. Dept.*, 291 AD2d 683, 687). Indeed, the findings of fraud by petitioner are alone sufficient to merit the penalty imposed. Thus, revocation is all the more appropriate given the finding of gross negligence (*see, Matter of Harris v Novello*, 276 AD2d 848, 851; *Matter of Post v State of New York Dept. of Health*, 245 AD2d 985, 987).

Mercure, J.P., Crew III, Rose and Lahtinen, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.