[888 NYS2d 737]

In the Matter of JAMES M. LIGUORI, D.O., Petitioner, v ROBERT E. BELOTEN, Chair, New York State Workers' Compensation Board, et al., Respondents.

Supreme Court, Albany County, October 29, 2009

### APPEARANCES OF COUNSEL

*Quadrino & Schwartz, P.C.*, Garden City (*Harold J. Levy* of counsel), for petitioner. *Andrew M. Cuomo, Attorney General*, Albany (*Susan C. von Reusner* of counsel), for respondents.

### OPINION OF THE COURT

EUGENE P. DEVINE, J.

Petitioner has commenced a second proceeding pursuant to CPLR article 78 to annul the determination of respondents which, under the auspices of Workers' Compensation Law § 13-d (5), removed him as an eligible medical care provider within the workers' compensation system. Respondents have opposed the petition and the parties provided the court with oral arguments on September 23, 2009. The underlying facts of this proceeding have been provided in the court's prior decision[1] and will be briefly restated, as necessary.

After petitioner pleaded guilty by consent order to one specification of misconduct, namely the failure to maintain accurate records, in a proceeding before the New York State Department of Health's Office of Professional Medical Conduct (hereinafter OPMC), he was subject to censure and a reprimand, placed on probation for a three-year period, during which time he would work under a practice monitor, and required to pay a $25,000 fine, among other things. The action of OPMC was both remedial and punitive in nature. In addition, petitioner voluntarily took the further remedial step of purchasing expensive, more up-to-date equipment so as to be able to keep full records. Despite this and the fact that there was never any allegation of patient mistreatment, Joseph Salamone, the Director of respondent Workers' Compensation Board's (hereinafter the Board) Health Management Bureau, notified petitioner that he was no longer eligible to "render medical care to individuals who have suffered work-related injuries or illnesses."[2] Due to the lack of any real mechanism by which an administrative review of the decision could be obtained, petitioner asked this court to review and vacate the revocation determination. In a judgment dated May 21, 2009, this court granted the petition,

---

1. 24 Misc 3d 1217(A), 2009 NY Slip Op 51508(U) (2009).
2. Petition, exhibit A.

denied respondents' dismissal motion and remitted the matter to respondents to conduct additional proceedings in regard to petitioner's case in a manner that was rational and provide a detailed explanation "as to why petitioner's removal was warranted rather than a temporary suspension or another available penalty."[3]

Following such mandate, Salamone provided petitioner with a second letter which fully explained the Board's reasoning for removing petitioner from its list of providers, stating that, in light of the importance of proper record keeping by its providers and considering petitioner's term of probation under the consent order, the Chair of the Board found that revocation was an "appropriate" sanction.[4] Contrary to petitioner's claim that such decision was merely a "regurgitation" of the Board's previous revocation letter, the court finds that Salamone's June 26, 2009 letter adequately described the administrative processes by which a final decision was reached. Nonetheless, this court concludes that said determination was arbitrary and capricious and must be vacated.

■ This court's review of respondents' decision is limited to "whether 'the measure or mode of penalty or discipline imposed' constitutes an 'abuse of discretion.' "[5] An administrative sanction must be affirmed unless it is "so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness," thereby constituting an abuse of discretion as a matter of law.[6] "Where, as here, there is no 'grave moral turpitude' and no 'grave injury to the agency involved or the public weal,' courts may 'ameliorate harsh impositions of sanctions by administrative agencies . . . in order to accomplish what a sense of justice would dictate.' "[7]

After petitioner was charged with the record-keeping violation for his failure to maintain complete printouts from EEG tests, he purchased a digital EEG machine which would allow for the maintenance of complete test records on CD-ROM, "thus

---

3. 24 Misc 3d 1217(A), 2009 NY Slip Op 51508(U), *3; petition, exhibit D.

4. Petition, exhibit E.

5. *Matter of Featherstone v Franco*, 95 NY2d 550, 554 (2000), quoting CPLR 7803 (3).

6. *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck*, 34 NY2d 222, 233 (1974) (internal quotation marks and citations omitted).

7. *Matter of Grady v New York State Off. of Children & Family Servs.*, 39 AD3d 1157, 1158 (4th Dept 2007), quoting *Matter of Pell v Board of Educ.*, 34 NY2d at 235; *see Matter of Kelly v Safir*, 96 NY2d 32, 39 (2001).

eliminating the possibility of recurrence of the problem" which resulted in the consent order.[8] Respondents, however, gave this mitigating factor absolutely no weight.[9] While this court would agree with respondents' contention that they have the authority to levy the penalty of revocation where a practitioner engages in record-keeping offenses and not just where acts of negligence or patient harm are committed, under these particular facts and circumstances, revocation was excessive. Moreover, as the court may look to the totality of the punishment for a given offense, an agency cannot tack on to the prior findings and penalty given by another agency and then argue, as respondents do, that the court must examine their particular punishment in a vacuum, without giving any consideration to the cumulative and highly detrimental effects that both determinations had on an individual. In addition, it is interesting to note that since the implementation of this new statute, respondents have never imposed anything less than revocation.

As previously mentioned, there are no allegations of improper care or treatment of petitioner's patients or other acts of medical negligence. Importantly, the record-keeping violation, which has been fully remedied by petitioner's purchase of expensive new equipment, does not indicate a "lack of capacity" as a physician or provider of health care to workers' compensation claimants, nor has such violation had any negative impact on the Board or the workers' compensation system as an institution.[10] Despite his otherwise spotless record, petitioner is now deprived of 15% to 20% of his patient base, devastating his practice and forcing his claimant patients to seek treatment and evaluation elsewhere.[11] While it can be said that the penalty imposed pursuant to the OPMC consent order will ultimately cause petitioner to gain greater professional competence, respondents' punishment will do no such thing.[12] Here, it is uncontroverted that there was no claim of incompetent medical care or malpractice by petitioner; petitioner fully admitted his error and went to great expense to remedy said error, which

8. Affidavit of petitioner ¶ 7.

9. *See e.g. Matter of Senior v Board of Educ. of Byram Hills Cent. School Dist.*, 37 AD3d 610, 611 (2d Dept 2007); *Matter of Goudy v Schaffer*, 24 AD3d 764, 765 (2d Dept 2005).

10. *See Matter of Harris v Mechanicville Cent. School Dist.*, 45 NY2d 279, 285 (1978).

11. *Matter of Senior v Board of Educ. of Byram*, 37 AD3d at 611.

12. *Compare Matter of Gonzalez v New York State Dept. of Health*, 232 AD2d 886, 891 (3d Dept 1996).

included a three-year term of probation under the supervision of a practice monitor and a $25,000 fine. After all of this, respondents claim that it is reasonable to impose a penalty which would reduce petitioner's practice by as much as 20%. This court finds that response to be *totally* unreasonable and will, therefore, exercise its authority to annul the penalty of revocation. As this court is "free to state the maximum penalty the record will sustain,"[13] the court finds that the term of revocation already served by petitioner since he was removed from the provider list in June 2009 is a *far* greater penalty than could possibly be warranted under the attendant facts and circumstances. Therefore, respondents are ordered to immediately restore petitioner to the list of eligible workers' compensation physicians.

Petitioner also claims that his procedural due process rights were violated inasmuch as his revocation occurred without being afforded a hearing on the matter and that section 13-d (5) of the Workers' Compensation Law is unconstitutional. While proceedings pursuant to CPLR article 78 do not provide for scrutiny of legislative enactments, where, as here, the acts of an administrative agency are challenged, the court may engage in such review.[14] However, the court is not convinced that respondents' actions, which had no further impact on petitioner's medical license, deprived him of any vested liberty interest requiring notice and a hearing.[15] Thus, petitioner's constitutional claims are denied.

Accordingly, it is ordered and adjudged that the petition is granted and respondents' determination of revocation is immediately annulled; it is further ordered and adjudged that respondents must restore petitioner to the list of eligible workers' compensation physicians.

Those arguments not specifically addressed herein have been found to be without merit.

---

**13.** *Rob Tess Res. Corp. v New York State Liq. Auth.*, 49 NY2d 874, 876 (1980).

**14.** *See New York City Health & Hosps. Corp. v McBarnette*, 84 NY2d 194, 204 (1994).

**15.** *Board of Regents of State Colleges v Roth*, 408 US 564, 573 (1972); *see e.g. Trakis v Manhattanville Coll.*, 51 AD3d 778, 780-781 (2d Dept 2008); *Canal Carting, Inc. v City of N.Y. Bus. Integrity Commn.*, 19 Misc 3d 923, 933-935 (Sup Ct, NY County 2008).